(June 20, 1985)

■ 829 SEVENTH AVENUE COMPANY, Respondent, v EVE REIDER, Appellant. — Order of the Appellate Term, First Department, entered March 2, 1984, which reversed the judgment of the Civil Court, New York County (Jay Dankberg, J.), entered March 31, 1983, so as to reinstate the petition and award final judgment of possession in favor of the landlord, is modified, on the law and the facts, by reversing so much thereof as determined that appellant is not entitled to remain in occupancy pursuant to New York City Rent and Eviction Regulations § 56 (d) and reinstated the landlord's petition for possession, and that part of the order which ruled that the petitioner adequately demonstrated a landlord-tenant relationship is affirmed, without costs.

Defendant's grandmother, Verne Reider, entered into a lease on September 1, 1966 with 829 Seventh Avenue Corp., predecessor in interest to petitioner 829 Seventh Avenue Co. Upon expiration of the lease Verne Reider remained in possession as a statutory tenant pursuant to New York City rent control laws until her death on September 29, 1982. At a holdover proceeding commenced against her, Eve Reider, the tenant's granddaughter, claimed entitlement to remain in possession under New York City Rent and Eviction Regulations § 56 (d), which provides: "No occupant of housing accommodations shall be evicted under this section where the occupant is either the surviving spouse of the deceased tenant or some other member of the deceased tenant's family who has been living with the tenant."

At the holdover proceeding appellant testified that pursuant to her grandmother's request she moved into her grandmother's apartment on a full-time and permanent basis on May 1, 1982. Since the apartment had only one bedroom, appellant slept in a living room sofa bed. Appellant averred that the two shared all household chores and that she contributed $100 in cash toward the monthly rent. No cash receipts existed as proof of said arrangement. Appellant never put her name on her grandmother's mailbox nor advised the doorman or landlord of her occupancy. At the commencement of the residency, appellant's grandmother was in good health and still self-employed as a voice instructor. On August 17, 1982, the grandmother was suddenly hospitalized for an undisclosed ailment and remained hospitalized until her death on September 29, 1982. During September and October appellant paid the rent, using her own checks, which payments were accepted by the landlord. In October, when appellant informed the building's managing agent of Verne Reider's death, she was told that she had no right to

continued occupancy, and her rent check for November was rejected. On November 5, 1982, the landlord served on appellant a notice of termination of license and/or notice to quit.

Appellant also testified that prior to moving in with her grandmother, she had been living in a studio apartment in Rego Park, Queens under a one-year lease which had a term running from October 11, 1981, to September 30, 1982. Pursuant to an oral agreement, she arranged to sublet her apartment to a friend, Jill Kramer, as of May 1, 1982, intending never to return so that she could instead reside permanently with her grandmother. Jill Kramer also testified and corroborated that this arrangement had indeed been made. Appellant never sought a renewal of that lease. Appellant also admitted that she maintained her Queens telephone number and her bank accounts at a Rego Park bank.

The landlord's sole witness was Allen Cohen, the vice-president and manager of Burley Company, which served as managing agent for the building. He testified that the landlord had no knowledge of appellant's presence in her grandmother's apartment until after the grandmother's death.

The hearing court specifically found that appellant's testimony "was and is credible" and that she "did indeed take occupancy of the apartment in May 1, 1982" which occupancy had the required characteristics of "permanency and continuity envisioned by the Appellate Term in Goodhue House v. Bernstein." The court, therefore, concluded that appellant, being a member of Verne Reider's family and having established that she was living with her grandmother, was entitled to the protection of section 56 (d).

On appeal to the Appellate Term, that court found that appellant's testimony below was "difficult to believe on its face", her claim of residency with her grandmother was "contradicted by the objective evidence of her continued residence at the Rego Park apartment" and there was an "absence of any objective proof of her claimed residence with her grandmother." Appellate Term then concluded that appellant "failed to establish a permanence and primacy of residence with her grandmother sufficient to afford her [the] protection of Section 56(d)."

Both the hearing court and the Appellate Term were guided in their determination of the "living with" requirement of section 56 (d) by the Appellate Term's decision of Goodhue House Co. v Bernstein (NYLJ, Dec. 7, 1981, p 14, col 3), which in relevant part states: "It will be seen that the regulation does not specify any particular period of time during which the family member must have been living together with the controlled tenant.

Manifestly, the purpose of the section is to give a measure of protection to those who have been residing with the deceased (or vacated) tenant as an integral member of that tenant's family unit. Such relationships usually connote a fair degree of permanence and continuity. Each case is sui generis". Each court recognized appellant's obligation to establish that she had an occupancy with her grandmother marked by permanence and continuity. However, the two courts differed in their assessment of appellant's credibility and the significance of certain admitted facts.

As to assessment of witness credibility, it is a basic principle of appellate review that the findings of the nisi prius court, which alone has had the opportunity to hear and observe the witnesses and their demeanor on the stand, are to be accorded the greatest respect and are not to be disturbed, even if there is some evidence leading to a contrary result, so long as they have sufficient support in the record and are not contrary to the law. (*Eschbach v Eschbach,* 56 NY2d 167, 173; *Merrill Transp. Co. v State of New York,* 97 AD2d 921; *Matter of Cristo,* 86 AD2d 700, 701.) There was ample support in the record for the hearing court's determination that appellant's testimony was credible and that she had established an occupancy of permanency and continuity which was not necessarily contradicted by such facts as that she had an apartment in Rego Park, which she subletted on a furnished basis, and that she maintained her telephone and bank accounts there.

Given that her grandmother had only a one-bedroom apartment, and given the high costs of storage, it was not unreasonable for appellant not to have taken her furniture with her. Also, given the ease with which she would be able to use a branch office bank in New York City, there was no urgency necessitating that appellant close her bank accounts and open new ones. While appellant did have a one-year lease for her Rego Park studio, it was apparently relinquished before the landlord at bar raised any objection to her occupancy of her grandmother's apartment. In contradiction to Appellate Term's suggestion that appellant hid her occupancy in her grandmother's apartment from the landlord is the fact that she paid September's rent, before her grandmother died, with one of her own checks. Thus, even the objective facts cited by the Appellate Term, though permissive of varying interpretations, are not sufficient to countervail the hearing court's conclusion that appellant's testimony was credible and that she did establish a permanent and continuous occupancy at her grandmother's apartment, so as to entitle appellant to the protection against eviction afforded a member

of a deceased tenant's family by New York City Rent and Eviction Regulations § 56 (d). Accordingly, Appellate Term acted improperly in reversing Civil Court's findings. Concur — Sandler, Carro, Rosenberger and Ellerin, JJ.

Murphy, P. J., dissents in a memorandum as follows: I would affirm for the reasons stated by the Appellate Term.

The Court of Appeals has recently stated that a landlord is not required "to renew a lease as an apartment is successively passed to the members of [a] tenant's family." (*Tagert v 211 E. 70th St. Co.,* 63 NY2d 818, 821, *modfg* 98 AD2d 647). Certainly, Verne Reider's status as a rent-controlled tenant is not descendible as of right. Consanguinity, combined with a temporarily shared living arrangement, is insufficient to afford a family member the protection of New York City Rent and Eviction Regulations § 56 (d). In addition to a familial relationship, a person must show concurrent occupancy of the apartment as an integrated member of a family unit. (*Goodhue House Co. v Bernstein,* NYLJ, Dec. 7, 1981, p 14, col 3 [App Term 1st Dept]; *Tagert v 211 E. 70th St. Co., supra.*) Here, Verne Reider had lived alone in the subject premises for some 15 years. The best that can be said in her granddaughter's favor is that she established temporary lodging with the deceased. Eve Reider's status as the tenant of record of the Rego Park apartment at all times up to and including the date of her grandmother's demise, the absence of any written evidence of the sublease to her friend or payments to her grandmother, and the lack of notice to her landlord, bank and post office amply support Appellate Term's conclusion that Eve Reider had failed to establish the requisite permanence and primacy of her residence with her grandmother so as to entitle her to section 56 (d) protection.